IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DUBRIC MITCHELL,
ICE # A20-212-502,

       Petitioner,

vs.                       Case Number 4:06cv333-WS/WCS

ALBERTO GONZALES,
MICHAEL CHERTOFF,
MICHAEL ROZOS,
DAVID WING, and the
DEPARTMENT OF HOMELAND SECURITY,

       Respondents

_____/

## REPORT AND RECOMMENDATION

On July 13, 2006, Petitioner, proceeding *pro se*, filed a § 2241 petition, doc. 1,

and service was directed.  Doc. 5.  Respondents filed an Answer to the petition on

October 3, 2006.  Doc. 11.  Petitioner filed a reply on October 20, 2006.  Doc. 14 and

doc. 15 (duplicate of doc. 14).

**The petition**

Petitioner seeks release from what is claimed to be an indefinite period of

custody.  Petitioner does not challenge the final order of removal.  Rather, he contends

that his native country, Jamaica, "has refused to issue travel documents to him because Jamaica has no record of him."  Doc. 1.  Thus, he contends that ICE will not be able to deport him in the "reasonably foreseeable future."  *Id.*  Petitioner alleges he has been held beyond the presumptively reasonable period of detention as established by Zadvydas v. Davis, 533 U.S. 678 (2001), and asserts his entitlement to release.  In particular, Petitioner alleged that he had been in immigration custody since May 5, 2003, which, at this point, is a period of over three years.  *Id.*  However, Petitioner also states that he was not ordered removed from the United States until March 7, 2005.  *Id.,* at 5.  Petitioner is currently detained in Wakulla County Jail.  Doc. 14.

**Evidence**

Petitioner asserts that he was "born in Jamaica on May 24, 1941" and is now 65 years of age.  Doc. 1, p. 3.  Petitioner has lived in the "United States since his entry on January 5, 1944, and has lived in Florida" since the time of his arrival approximately 62 years ago.  *Id.*; *see also* doc. 11, Exhibit A.  Petitioner was adopted by citizens of the United States when he was just three years old.  Doc. 1, p. 3.

Petitioner was convicted of Attempted Sexual Battery on October 3, 1996.  Doc. 11, p. 2; *see* Exhibit A, p. 2.  Petitioner was sentenced to 268 imprisonment.  Doc. 11, p. 2; *see also* Exhibit B.  On September 8, 1998, Petitioner represented himself to be a United States Citizen to obtain a Florida Drivers License.  Doc. 11, p. 2; Exhibit A, p. 2. Petitioner was served with a Notice to Appear on June 29, 2004, and charged with violations of § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), present without being admitted, and § 212(a)(2)(A)(i)(I), crime involving moral turpitude, and §

212(a)(6)(C)(ii), false representation of United States Citizenship.  Doc. 11, pp. 2-3.

Petitioner was ordered removed on March 7, 2005.  *Id.*, at 3; Exhibit E.  After initially

filing an appeal to the Board of Immigration Appeals, Petitioner withdrew his appeal.

Doc. 11, p. 3; Exhibit F.  The order of removal became final on July 26, 2005, when

Petitioner withdrew his appeal.  Doc. 11, p. 5.

In the removal proceedings, the Immigration Judge found that Petitioner was "a

native and citizen of Jamaica who was admitted to the United States in 1952."  Doc. 11,

Exhibit E, p. 2.  It was also found that Petitioner had never become a "lawful permanent

resident" and "never acquired any derivative" United States citizenship, although

petitions were filed for him based upon marriages to United States citizens.  Doc. 11,

Exhibit E, p. 2.  The records indicate that "there was an approved [Form] I-130[1] in June

of '75," but Petitioner "did not adjust status based on that."  *Id.*

The Department of Homeland Security (hereinafter "DHS") requested travel

documents from Jamaica to remove Petitioner on August 3, 2005.  Doc. 11, p. 3; Exhibit

G.  On December 2, 2005, DHS requested emergency travel documents from the

Jamaican Embassy."  Doc. 11, p. 3; Exhibit G.  Petitioner was served with Form I-

229(a), Warning of Failure to Depart and Instruction Sheet.  Doc. 11, p. 3; Exhibit G.[2]

---

[1] An I-130 petition is a petition for certain alien relatives allowing immediate relatives of United States citizens or permanent residents to immigrate to the United States.  It is filed by a U.S. citizen for a spouse, parent, child, or sibling, and may be filed by a lawful permanent resident for a spouse or child.

[2] The form has not been filed and it is unknown what instructions were given to Petitioner, if any, for additional documents or assistance.

On September 11, 2006, Officer Rita Perry, a Deportation Officer from DHS, U.S.

Immigration and Customs Enforcement (ICE), made a telephone call to the Consulate

General of Jamaica concerning the status of Petitioner's travel document.  Doc. 11, p.

Exhibit G.[3]  Officer Perry's notation concerning that call states:

> Called Mr. Carter.  He stated that subject was not telling him the truth and
> he could not issue a document until he had a copy of subject's birth
> certificate.  I called subject up to obtain biographic information.  He
> proceeded in telling me information different from his immigration file.  He
> was sent back to his cell until he can tell the truth.  I contacted (via email)
> Charles Jean at the ICE office in Jamaica to try to obtain subject's birth
> certificate.

Doc. 11, Exhibit G, p. 4.

Respondents contend that Petitioner is now "providing different identity

information than he provided at the start of his immigration proceedings."  Doc. 11, pp.

3, 9.  Specifically, Respondents assert that during the immigration proceedings,

Petitioner "indicated that he arrived in the United States when he was eleven or twelve

years of age and did not mention an adoption."  Doc. 11, pp. 9-10; *See* Exhibit D, p. 36.

Respondents further contend that Petitioner "has provided different information

regarding his identity to the Jamaican consulate than he provided to DHS."  Doc. 11, p.

10; *see also* Exhibit G.

Respondents have provided as additional evidence the transcript from

Petitioner's removal hearing.  Doc. 11, Exhibit D.  The hearing occurred on November

17, 2004, and Petitioner was represented by counsel.  Doc. 11, Exhibit D, p. 35.  When

---

[3] There is an obvious error in Officer Perry's affidavit because she states that
Petitioner "entered the United States at an unknown place on October 26, 2004."  Doc.
11, Exhibit G, p. 2.  Petitioner was in this country well before 2004.

Petitioner was asked[4] about his entry into the United States.  *Id.*, at 37.  Petitioner

stated that he did not "even remember it (indiscernible)" but he said that he knew

"(indiscernible) been here 51 years."  *Id.*, at 37.  Petitioner was asked if he remembered

how old he was when he came to the United States and answered, "About 11 or 12 or

something (indiscernible.)."  *Id.*, at 37-38.  It was stated on that record, though, that as it

concerned the charge of falsely claiming to be a United States citizen for the purpose of

obtaining a driver's license, that Petitioner gave the driver's licensing officials his

Jamaican birth certificate to get the license.  *Id.*, at 40, 42.

Officer Perry has requested assistance from the American Embassy in Jamaica

to obtain what is asserted by Respondents as the "correct birth certificate" for Petitioner.

Doc. 11, p. 9.  Officer Perry is still "awaiting the results of that inquiry."  Doc. 11, p. 9;

Exhibit G.  Petitioner is currently being held at the Wakulla County Jail, doc. 14, and

contends his detention has now exceeded the three year mark.  While that fact is true, it

is also true that Petitioner's detention since his removal order became final has only

been for approximately one year and four months.

**Respondents' response, doc. 11**

Respondents contend that Petitioner's detention is lawful.  They argue that

"[t]here is no evidence that Petitioner has truthfully communicated with the Jamaican

consulates to provide other information to help acquire travel documents."  Doc. 11, p.

---

[4] Petitioner was not placed under oath on this date when this testimony was offered. Doc. 11, Exhibit D, p. 35-38.  At a later proceeding, Petitioner was sworn, but the question as to whether Petitioner had "been in [this] country since age 11," was asked and answered by Petitioner's attorney.  *Id.*, at 45-46.  At an additional proceeding, the attorney stated that Petitioner "came here in 1952."  *Id.*, at 51.

9.  "There is no evidence that [Petitioner] has advised Jamaica of any indicia of citizenship to facilitate the issuance of a travel document."  Doc. 11, p. 9.  Respondents contend that although Petitioner alleges in his § 2241 petition that he "arrived in the United States as an adopted child at the age of three," Petitioner "has presented no evidence of that [to] this Court."  *Id.*  Accordingly, Respondents state that Petitioner's extended detention is a result of his failure to cooperate and, therefore, Petitioner's detention is lawful.

**Petitioner's reply, doc. 14**

Petitioner states that "Respondents have all the information needed to obtain the travel documents for the Petitioner and that the Respondents have all his identification such as the drivers license, social security card and school records."  Doc. 14. Petitioner states again that he "was born in 1941 and came into the United States in 1944."  *Id.*, at 2.  He contends he . . .

> . . . was adopted by two United States Citizens (Frank and Jane Sanford of Orlando, Florida) from Jamaica and brought to the United States in 1994, a year when the 'registry' was still in effect for adjustment but his adopted parents may not have been aware of this fact, hence, they never adjusted his status nor apply for citizenship on his behalf, this information and other pertinent one have been delivered to the immigration authorities since the onset of these removal proceedings; he has been living in the United States since then and has never left the country.

Doc. 14, p. 2.  Petitioner also asserts that he had a conversation with the Jamaican consul "on Thursday 12th 2006[5] [sic] at 10.15 am, where the consul made affirmative

---

[5] Petitioner omitted the month of this conversation, but judicial notice is taken that there was a Thursday, October 12, 2006.  It is presumed that this is when the conversation took place.  The only other Thursday the 12th was in January, 2006.

statements that he cannot and will not issue travel documents until he is able to verify a birth record, which did not exist before the 1950s in Jamaica." *Id.*

Petitioner states that he "has cooperated with the deportation officers since his final order of removal was entered since [sic] about 3 years and 6 months but the Respondents have not been able to remove the Petitioner as evident by the time elapsed and available documentation that they are in possession of . . .." *Id.*, at 3. Petitioner asserts that he "has never refused or failed to make timely application in good faith for travel documents neither has he prevented his removal in any way . . . ." *Id.* He contends he has "proven by presenting the [Department of Homeland Security] with capacious documentation" that his name and identification is Dubric Lloyd Mitchell. *Id.*, at 2.  Furthermore, Petitioner stated in the petition that because "he was brought here as a baby, he has no idea or records of any family in Jamaica."  Doc. 1, p. 5.  Further, his remaining family in Orlando does not know anyone in Jamaica. *Id.*

**Analysis**

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), from what he asserts is an unlawful and indefinite period of detention.  Doc. 1.  In Zadvydas, the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.[6]  The

---

[6] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id.*, at 689, 121 S. Ct. at 2498. The Court interpreted the statute to avoid constitutional threat by concluding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.,* at 699, 121 S.Ct. at 2503. For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[7] The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727. Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable. *Id.* Accordingly, under Clark and Zadvydas, when an

---

[7] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Under 8 U.S.C. § 1231(a)(1)(A), the government has a 90-day period to remove an alien.  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).[8]  Thus, the statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.  Therefore, in considering whether there appears to be no significant likelihood of Petitioner's removal in the reasonably foreseeable future, the Court must consider whether Petitioner's removal has been delayed or extended by Petitioner's own efforts.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000),[9] the court denied habeas relief where the Petitioner was found to be "the cause for the long delay."  The court concluded that "an alien cannot trigger [a constitutional right to

---

[8] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

[9] This case was decided before Zadvydas.

be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials."  Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of Zadvydas v. Davis, the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' "  Powell, 194 F.Supp.2d at 211, *citing* Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas).  The court held that Zadvydas was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation."  Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001).  The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed.  Powell, 194 F.Supp.2d at 212.  *See also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002) (holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July

22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

In another case, Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003), the court found that petitioner's detention was "indefinite only because he refuse[d] to cooperate with the Immigration and Naturalization Service's ("INS") efforts to remove him."  Pelich, 329 F.3d at 1057.  In such circumstances, the court concluded that the petitioner had "no cause to complain" and the denial of his § 2241 habeas petition was affirmed.  329 F.3d at 1057-58.

Additionally, relying on the decision from Powell v. Ashcroft, *supra*, which found that the removal period may be tolled where the alien acts to frustrate the Government's efforts to effect his or her removal, the Eastern District of New York has explained the various situations which have been held to toll the removal period:

> Section 1231 states that if an alien acts to frustrate the INS' ability to remove him, the removal period is tolled during the period of the alien's actions.  8 U.S.C. § 1231(a)(1)(C); Powell v. Ashcroft, 194 F.Supp.2d 209, 210 (E.D. N.Y. 2002).  The limited case law on what constitutes a "frustration of removal" has not interpreted this phrase expansively: courts have only tolled the removal period in cases where the alien has sought and received a stay of removal through judicial action (*see* Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002)), or where the alien has demonstrated some sort of bad faith failure to cooperate, such as providing the INS with false or inconsistent information regarding his identity or country of origin (*see* Powell, *supra*; Ncube v. INS, No. 98 Civ.

0282, 1998 WL 842349 at *16 (S.D. N.Y. Dec. 2, 1998)), or refusing to complete travel arrangements or name a country for deportation (<u>Riley v. Greene</u>, 149 F.Supp.2d 1256, 1262 (D. Colo. 2001); <u>Sango-Dema v. District Director</u>, 122 F.Supp.2d 213, 221 (D. Mass. 2000); *Cf.* <u>Ford v. Quarantillo</u>, 142 F.Supp.2d 585, 588 (D. N.J. 2001) (ordering release of alien detained for 14 months, even though he misrepresented his country of origin)).  Indeed, as <u>Seretse-Khama</u> has held, a petitioner's truthful statement (such as expressing that he did not wish to return to his country of origin) which is later adopted by the country of origin as a reason for not wanting to repatriate that alien, is not an example of refusal to cooperate under § 1231(a)(1)(C), and cannot be used as a grounds for extending post-removal detention.  <u>Seretse-Khama v. Ashcroft</u>, 215 F.Supp.2d 37, 50-53 (D. D.C. 2002).

<u>Rajigah v. Conway</u>, 268 F.Supp.2d 159, 165 (E.D. N.Y., 2003).  In <u>Rajigah</u>, the court concluded that the petitioner did not act in bad faith simply because he requested a stay of removal and "availed himself of judicial process and communicated to the Guyanese embassy his plans to" file an action in court.  268 F.Supp.2d at 166.[10]

Cited in <u>Rajigah</u> is <u>Seretse-Khama v. Ashcroft</u>, 215 F.Supp.2d 37 (D. D.C. 2002). There, the court determined that simply because an alien tells the Consul of his country of citizenship that he did not want to return, he is not hindering his removal.  215 F.Supp.2d at 51.  The court noted that the petitioner had not "refused to request travel

---

[10] Somewhat contrary to the <u>Rajigah</u> decision, though, is <u>Akinwale v. Ashcroft</u>, 287 F.3d 1050 (11th Cir. 2002).  There, the petitioner was taken into custody by Immigration officials following release from incarceration.  287 F.3d at 1051.  He filed a habeas petition just four months into his detention, asserting he "was being indefinitely detained . . . ."  *Id.*  The petition was denied based on a finding that the petitioner had not presented "a situation involving prolonged or indefinite detention pending removal."  *Id.* In approving the dismissal of the case, the Eleventh Circuit Court of Appeals concluded that a four-month period of detention was not "prolonged" pursuant to <u>Zadvydas</u>, and, furthermore, the petitioner had not shown the unlikeliness of his removal in the foreseeable future.  *Id.*, at 1051-52.  In a footnote, the Eleventh Circuit noted that Akinwale's filing of the stay of deportation "interrupted the running of time under <u>Zadvydas</u>" and acted to extend his own removal period.  *Id.*, at 1052, n.4.  In this case, Petitioner has not moved to stay a final order of removal.

documents or refused to be interviewed by Liberian officials." *Id.* No claims were

before the court that the petitioner had denied his citizenship, "gave false or misleading

information that impeded the issuance of travel documents." *Id.* Petitioner truthfully

answered the Consul's questions during an interview, but simply and "honestly told the

Consul that he did not want to return to Liberia in light of his lack of family in or ties to

Liberia, which he left . . . when he was only eight years old." *Id.* The court concluded

that such a statement without more does not amount to a "bad faith failure to

cooperate." *Id.*[11]

In this case, Petitioner has met his burden under Zadvydas. His removal order

has been final since the July 26, 2005. The Jamaican Consulate told him that they

---

[11] In a footnote, the court surveyed the case law on the issue of what "constitutes an affirmative act that prevents one's return" or removal:

> Furthermore, most of the case law was decided before the Court's ruling in Zadvydas. *See, e.g.*, Bini v. Aljets, 2002 WL 535083, 36 Fed.Appx. 868 (8th Cir. 2002) (alien who obtained stay of proceedings in district court prevented his removal); Powell v. Ashcroft, 194 F.Supp.2d 209, 210-211 (E.D. N.Y. 2002) (alien who claimed in four affidavits that he was from U.S. Virgin Islands, Jamaica, Trinidad, and Canada, and provided false name and false date of entry, prevented his removal); Riley v. Greene, 149 F.Supp.2d 1256, 1262 (D. Colo. 2001) (alien who admitted he refused to complete travel arrangements and refused to name any country for deportation); Sango-Dema v. District Director, 122 F.Supp.2d 213, 221 (D. Mass. 2000) (alien who refused to provide passport and birth certificate, and refused to communicate with embassy officials or complete application for documents); Ncube v. INS, 1998 WL 842349, *16 (S.D. N.Y. Dec. 2, 1998) (failing to provide INS with passport or proof of identification or nationality; many statements false or at least contradictory); *cf.* Ford v. Quarantillo, 142 F.Supp.2d 585, 588 (D. N.J. 2001) (ordering release of alien detained for 14 months, even though he misrepresented his country of origin).

215 F.Supp.2d at 51, n.18.

cannot issue travel documents for him because "Jamaica has no record of him."  Doc.

1, p. 5.  Zadvydas established a burden-shifting analysis and, after the presumptive six

month removal period has expired, an alien must provide "good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future."

Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Thereafter, "the Government must

respond with evidence sufficient to rebut that showing."  *Id.*  The Court also noted:

> And for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink.  This 6-month presumption, of course,
> does not mean that every alien not removed must be released after six
> months.  To the contrary, an alien may be held in confinement until it has
> been determined that there is no significant likelihood of removal in the
> reasonably foreseeable future.

*Id.*, at 701, 121 S.Ct. at 2505.  As noted above, Petitioner made the *prima facie*

showing.

Respondents have not truly responded on the merits.  Instead, Respondents

argue that removal has been delayed by Petitioner's failure to cooperate.  Doc. 11, pp.

7-10.  Indeed, Respondents asserts that "[o]nce the petition meets his burden, the

government will argue that the petitioner's removal is foreseeable."  *Id.*, at 10, n.5.

Respondents also have not demonstrated that Petitioner is hindering his

removal.  While they point out that Petitioner did not state during the earlier removal

proceedings that he was adopted, Petitioner was not asked that question.  Furthermore,

Respondents make much of the fact that Petitioner states in this § 2241 petition that he

arrived in the United States when he was three years of age, but stated previously in the

removal hearing that he was 11 or 12 years of age.  However, it is unclear why focusing

on the precise year Petitioner entered the United States is relevant to the present issue of determining whether Petitioner is hindering his removal.  It is also unknown exactly what Petitioner said in the hearing because the transcript records his response as being followed by an "indiscernible" comment.  *See* Exhibit G, p. 38.  A dispute about Petitioner's precise age upon arrival in the United States is not an appropriate basis for finding that Petitioner is not cooperating in his removal, especially when there does not appear to be any dispute that Petitioner was born in Jamaica, is a Jamaican citizen, came to this country as a child, and has lived here for over 50 years.

Respondents' argument focuses primarily on the claim that Petitioner has "provided different information regarding his identity to the Jamaican consulate than he provided to DHS."  Doc. 11, p. 10.  Respondents have presented no evidence to show what differing information was provided to the Jamaican consulate.

Petitioner provided documents, such as school records, a driver's license, and his social security card, to show his identity.  If Petitioner has been asked to provide other documents and has failed to do so, that fact should be readily provable by pointing to an I-229 form[12] and instructions that were given to Petitioner to explain what information he must provide.  It is unfair to claim that Petitioner is not assisting his removal without showing precisely what more is needed and demonstrating either that Petitioner has refused to provide the information or how he has been misleading.

There is, additionally, a sworn statement from Petitioner that Jamaican officials have "told him that Jamaica has no record of him and therefore cannot issue him travel

---

[12] The I-229(a) form is the "Warning for Failure to Depart" form.  *See* ex. F.

documents."  Doc. 1, p.5; *see also* doc. 14, p. 2.  Petitioner further contends that

Jamaican officials state there is no record of his birth and Petitioner claims that is a

common problem because birth records "did not exist before the 1950s in Jamaica."

Doc. 14, p. 2.  If Petitioner was adopted and brought here as a child and his parents are

deceased, as he claims, and if Jamaica has no birth records for a person of Petitioner's

age, it is unknown how those difficulties will be unraveled.  What does appear clear is

that the unraveling will take time.  Considering that Petitioner has already been detained

more than twice as long as the presumptively reasonable removal period, it does not

appear that this problem can be solved in the reasonably foreseeable future.  Indeed,

Respondents have been requesting travel documents since August 3, 2005.

In sum, Respondents have not supported their contention that Petitioner has

hindered his removal.  Moreover, Respondents have not come forward with any

evidence that there is a significant likelihood of Petitioner's removal in the reasonably

foreseeable future.  Petitioner does not appear to be able to provide any further

identification and Jamaican officials are also unable to verify Petitioner's birth record.

Thus, Petitioner has shown that his removal is not reasonably foreseeable and he is

entitled to release from detention.  *See* Zadvydas, 533 U.S. at 690 and 699-700, 121

S.Ct. at 2499 and 2504 (concluding that "[w]here removal is not foreseeable, then

continued detention is unreasonable, is not authorized by statute, and is not

constitutionally permissible.").

The statute governing release provides that if an alien "is not removed within the

removal period, the alien, pending removal, shall be subject to supervision under

regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  Such

regulations are to require the alien to: "(A) to appear before an immigration officer

periodically for identification; (B) to submit, if necessary, to a medical and psychiatric

examination at the expense of the United States Government; (C) to give information

under oath about the alien's nationality, circumstances, habits, associations, and

activities, and other information the Attorney General considers appropriate; and (D) to

obey reasonable written restrictions on the alien's conduct or activities that the Attorney

General prescribes for the alien."  8 U.S.C. § 1231(a)(3).[13]  Respondents should release

Petitioner from custody under such terms and conditions deemed necessary pursuant to

§ 1231(a)(3).

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus,

doc. 1, filed by Dubric Mitchell pursuant to 28 U.S.C. § 2241, be **GRANTED**, and the

Court **ORDER** that Petitioner be immediately released upon conditions of supervision

pursuant to 8 U.S.C. § 1231(a)(3).

**IN CHAMBERS** at Tallahassee, Florida, on December 13, 2006.

s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Inadmissible or criminal aliens must be subject to terms of supervision.  8 U.S.C. § 1231(a)(6).

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.